IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| KELLY L. FORDHAM, | ) | Civil No.: 6:13-cv-00907-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      Robyn M. Rebers
      PO Box 3530
      Wilsonville, OR 97070

            Attorney for Plaintiff

      S. Amanda Marshall, U.S. Attorney
      Adrian L. Brown, Asst. U.S. Attorney
      1000 S.W. 3rd Avenue, Suite 600
      Portland, OR 97204

Leisa A. Wolf
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff Kelly Fordham brings this action pursuant to 42 U.S.C. §405(g) seeking judicial

review of a final decision of the Commissioner of Social Security (the Commissioner) denying

her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB)

under the Social Security Act (the Act).  Plaintiff seeks an Order remanding the action to the

Social Security Agency (the Agency) for further proceedings.

For the reasons set out below, the Commissioner's decision should be affirmed.

## Procedural Background

Plaintiff filed applications for SSI and DIB on November 30, 2009, alleging that she had

been disabled since March 1, 2007.

After her claims were denied initially and on reconsideration, Plaintiff timely requested

an administrative hearing.

On November 30, 2011, a hearing was held before Administrative Law Judge (ALJ) John

Bauer.  Plaintiff and C. Kay Wise, a Vocational Expert (VE), testified at the hearing.

In a decision filed December 19, 2011, ALJ Bauer found that Plaintiff was not disabled

within the meaning of the Act.

On May 15, 2013, the Appeals Council denied Plaintiff's request for review, rendering

the ALJ's decision the final decision of the Commissioner.  In the present action, Plaintiff

challenges that decision.

## Background

Plaintiff was born on June 24, 1978 and was 33 years old at the time of the ALJ's decision. She attended school through the tenth grade and participated in special education classes. Plaintiff has no past relevant work experience.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the

regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

## **Medical Record and Testimony**

Like the parties, I will not separately summarize the medical record or the witnesses' testimony here, but will instead address relevant portions of the evidence in the discussion of Plaintiff's contentions.

FINDINGS AND RECOMMENDATION – 4

**ALJ's Decision**

As an initial matter, the ALJ found that Plaintiff had last met the requirements for insured status on January 1, 2013.

At the first step of the disability assessment process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.

At the second step, he found that Plaintiff had the following "severe" impairments: morbid obesity, bilateral knee osteoarthritis and low average cognitive functioning.  The ALJ found that Plaintiff's alleged carpal tunnel syndrome and fibromyalgia were not medically determinable impairments and that her hypertension, migraine headaches, depression, anxiety and social phobia were all non-severe medically determinable impairments.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App. 1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC).  He found that Plaintiff retained the capacity to perform less than the full range of sedentary work and that she was limited to performing "simple, routine, entry level work."  In determining Plaintiff's RFC, the ALJ found that Plaintiff's allegations concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with his RFC assessment.

At the fourth step, the ALJ found that Plaintiff had no past relevant work.

At the fifth step of his analysis, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy.  Based upon testimony from the VE, the ALJ cited addresser and merchandise marker as examples of the work that Plaintiff could

perform.  Having concluded that Plaintiff could perform such work, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record,  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process.  Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred in failing to ask the VE if her opinion was consistent with the Dictionary of Occupational Titles (DOT) and erred in relying on VE testimony that was

inconsistent with the DOT.  She also contends that the ALJ failed to accurately assess her RFC and failed to provide the requisite support for his conclusion that Plaintiff's subjective symptom testimony was not wholly credible.

I. **VE Testimony and the DOT**

Plaintiff contends that the ALJ did not comply with Social Security Ruling 00-4p because he failed to ask the VE if her opinion was consistent with the DOT and failed to obtain a reasonable explanation for any inconsistency despite an apparent conflict between the VE evidence and the DOT.  Plaintiff also contends that the ALJ erred by relying on the VE's testimony in concluding at step five that she could work as an addresser or a merchandise marker.  She argues that, according to the DOT, these positions require a Reasoning Level of 2 which is inconsistent with the ALJ's RFC that limited her to "simple, routine, entry level work." Plaintiff also contends that the position of merchandise marker is described in the DOT as "light" exertion work, which is inconsistent with the ALJ's RFC limiting her to sedentary work.

A. **Standards**

Each job description in the DOT includes within its definition trailer a specific vocational preparation (SVP) component and a general education development (GED) component. DOT, App'x C, available at 1991 WL 688702 (1991). A job's SVP is focused on "the amount of lapsed time" it takes for a typical worker to learn the job's duties. Id.  A job's SVP is used by the Agency in classifying an occupation as unskilled, semi-skilled, or skilled.  20 C.F.R. § 416.968. The GED component comprises reasoning development, mathematical development and language development.  Reasoning development, which is rated on a scale of one to six, identifies the reasoning ability required to complete the job's tasks. DOT, App'x C, available at 1991 WL 688702.  A job involving Level 2 reasoning means that an individual must be able to

"[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." Id.

Social Security Ruling 00–4p states that the Agency relies "primarily on the DOT ... for information about the requirements of work in the national economy. We use these publications at Steps 4 and 5 of the sequential evaluation process." SSR 00–4p, available at 2000 WL 1898704 at *2.  Although the occupational evidence provided by a VE should generally be consistent with the occupational information supplied by the DOT, neither the DOT nor the VE evidence automatically "trumps" when there is a conflict. Id.  As part of the ALJ's duty to fully develop the record, the ALJ must, on the record, ask the VE if the evidence he or she has provided conflicts with the DOT. Id. at *2, *4.  When there is an "apparent unresolved conflict" between the VE evidence and the DOT, it is the duty of the ALJ to elicit a reasonable explanation for the conflict before relying on the VE's evidence. Id.; see also Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007).  Failure to make such an inquiry is procedural error but such error may be harmless if there is no actual conflict between the VE's testimony and the DOT, "or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts." Massachi, 486 F.3d at 1154 n .19.

District courts in the Ninth Circuit are divided on the question of whether the ability to perform simple, routine work is consistent with Reasoning Level 2, and there is no Ninth Circuit controlling precedent.   Some district courts have concluded that there is an inconsistency between these RFC limitations and Level 2 Reasoning. See, e.g. Burnsides v. Astrue, 2010 WL 2730966 at *5 (D.Or. July 9, 2010) ("simple, routine instructions and tasks" inconsistent with level 2 reasoning); Pope v. Astrue, 2011 WL 3584802 at *17 (D.Or. May 20, 2011) (ability to

understand and remember simple instructions and carry out simple routine tasks in conflict with
level 2 reasoning).

However, several courts have concluded that the ability to perform simple, routine work
tasks is not inconsistent with Level 2 reasoning. See, e.g., Harrington v. Astrue, 2009 WL
102689 at *2 (S.D.Cal. Jan. 14, 2009) (simple, repetitive work is consistent with the definition of
GED reasoning level two); Maxwell v. Commissioner Social Sec. Admin., slip op, 2013 WL
4087558 at *19 (D.Or. August 12, 2013) (limitations to "simple, routine instructions and
procedures," and "simple, routine tasks" not inconsistent with level 2 reasoning); Patton v.
Astrue, 2013 WL 705909, at *1 (D.Or. Feb. 25, 2013) (same); Pitts v. Astrue, 2011 WL 3704124
at *7 (D.Or. Aug. 23, 2011) (limitation to "simple, repetitive tasks" not inconsistent with level 2
reasoning); Gottschalk v. Colvin, 6:13-cv-00125-JE (D.Or. May 1, 2014) available at 2014 WL
1745000, *5 (ability to perform simple, routine, repetitive work not inconsistent with Level 2
reasoning).   In an unpublished opinion, the Ninth Circuit appears to join those who find no
inconsistency.  See Lara v. Astrue, 305 F. App'x 324, 326 (9th Cir. 2008)(unpublished) (finding
that "someone able to perform simple, repetitive tasks is capable of doing work requiring more
rigor and sophistication—in other words, Reasoning Level 2 jobs").

**B. <u>Analysis</u>**

Here, the ALJ failed to explicitly ask the VE if her testimony was consistent with the
DOT.  However, the VE testified that as to the exertion level required for the merchandise
marker position, more recent publications from the U.S. Department of Labor indicated that
sedentary positions exist.  The VE also testified that, according to this publication, there were
2,800 sedentary merchandise marker positions in Oregon and the national economy has 245,000
of these positions at the sedentary level.  The record, therefore, contains a sufficient explanation

FINDINGS AND RECOMMENDATION – 9

from the VE as to the discrepancy between her testimony and the DOT as to the exertion level of the merchandise marker job.  Although it was error for the ALJ to fail to make the inquiry required by SSR 00-4p, such error was harmless and the ALJ properly relied on the VE's testimony as it pertained to the Plaintiff's ability to perform the merchandise marker job despite her limitation to sedentary work. SSR 00-4p; see also Massachi, 486 F.3d 1149 at 1154 n.19 (error harmless where the VE provides "sufficient support for her conclusion so as to justify any potential conflicts").

I also conclude that the ALJ's failure to inquire regarding any conflict between the VE's testimony and the DOT regarding the Level 2 reasoning requirements of the addresser and merchandise marker jobs was harmless error.  I am persuaded by the reasoning of those cases that conclude that the ability to perform simple, routine tasks is not inconsistent with Level 2 reasoning.  Thus, the jobs identified by the VE in this case, which carry Level 2 reasoning requirements,  are not inconsistent with Plaintiff's limitation to "simple, routine, entry level work." See Id. (error harmless if there is no actual conflict between the VE's testimony and the DOT). Accordingly, the VE's testimony that Plaintiff was able to perform the addresser and merchandise marker jobs despite her limitations constituted substantial evidence upon which the ALJ was entitled to rely.

## II. **ALJ's Residual Functional Capacity Assessment**

Plaintiff also argues that the ALJ's RFC failed to include all of the functional limitations resulting from Plaintiff's non-severe impairments of depression, anxiety and social phobia and failed to adequately address her limitations in social functioning.

Plaintiff argues that claimant's depression, anxiety and social phobia are severe impairments but even if they are non-severe impairments, as determined by the ALJ, they

resulted in functional limitations that the ALJ was required to consider in assessing Plaintiff's

RFC. Defendant argues that Plaintiff does not demonstrate that these impairments caused any

functional limitations significant enough to be included in the RFC and that the ALJ did not err

in omitting these limitations.  I agree.

Plaintiff asserts that the fact that her anxiety, depression and social phobia had more than

a minimal effect on her ability to perform basic work activities was "evident by her complaints

of paranoia, fear of leaving her home, etc."  Plaintiff cites to the self-reported complaints she

made during her psychological evaluation with consultative psychologist Nick Dietlein, Psy.D.

that she doesn't leave her house very often because of her anxiety and that she often has paranoid

thoughts.

Plaintiff also argues that agency reviewing psychologists opined that Plaintiff had

moderate limitations in her ability to interact with the general public and that the ALJ assessed

Plaintiff with a moderate degree of limitation in her social functioning.  Agency reviewing

psychologist Dr. Sandra Lundblad opined that Plaintiff was moderately limited in her ability to

interact appropriately with the general public.  In response to a question asking for an

explanation of the social interaction limitations provided, Dr. Lundblad wrote "Incidental public

contact in the workplace. Able to shop for food 2-3x/mo for 1-2 hrs."  Agency reviewing

psychologist Paul Rethinger also assessed Plaintiff as moderately limited in her ability to interact

appropriately with the general public, but like Dr. Lundblad, went on to determine that Plaintiff

was not disabled.

The ALJ acknowledged Plaintiff's statements to Dr. Deitlein and other complaints of

social anxiety and paranoia and considered the opinions of state agency psychological

consultants.  He noted that those consultants opined that Plaintiff had no limitations in

concentration, persistence, pace, social functioning or adaptation.  The ALJ gave weight to those opinions except that he expanded Plaintiff's limitations due to Dr. Deitlein's findings that Plaintiff was functioning in the low average range cognitively.  The ALJ also noted other evidence in the record that Plaintiff was able to shop in stores for one to two hours at a time, had a girlfriend and that Dr. Deitlein noted that Plaintiff was able to engage in social interactions at an acceptable level.

A careful review of the medical evidence and the ALJ's decision, including his determination discussed below that Plaintiff's statements were less than credible, supports the conclusion that the ALJ's determination that Plaintiff's anxiety, depression and social phobia were not "severe" impairments was supported by the record and that he adequately considered any limitations resulting from her non-severe impairments.

In regard to the ALJ's assessment that Plaintiff had a moderate degree of limitation in her social functioning, Plaintiff's argument conflates the ALJ's listings analysis at step three and the ALJ's residual functional capacity assessment relevant to steps four and five. A claimant's allegations of severe mental impairment requires application of the analysis provided in a "special technique." 20 C.F.R. §§ 404.1520(a), 416.920a(a). Pursuant to the special technique, relevant symptoms, signs, and medical findings are evaluated to determine whether the claimant has any medically determinable mental impairments. 20 C.F.R §§ 404.1520a(b)(1), 416.920a(b)(1). If such impairments are shown, the ALJ specifies the evidence establishing the existence of the impairments and evaluates the claimant's degree of functional limitation. 20 C.F.R. 404.1520a(b)(1), 416.920 a(b)(1). As part of step three of the disability analysis, the ALJ identifies the existence of any potentially disabling mental impairment under the "A" criteria. If

such an impairment is established, the ALJ then evaluates the general severity of the impairment under the "paragraph B" criteria. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A).

The ALJ's residual functional capacity (RFC) assessment is separate and distinct from the special technique analysis. See 20 C.F.R. §§ 404.1520a(b)(1), 404.1546(c), 416.920a(b)(1), 416.946(c); SSR 96–8p. As the ALJ noted in his decision, the limitations identified in the "paragraph B" criteria "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." Tr. 18. See, e.g., Dodds v. Astrue, CV No. 3:09–cv00332–AC, slip op. at 6 (D.Or. Dec. 28, 2010), available at 2010 WL 5662968 at *3 (B criteria used to determine whether impairment is severe enough to require RFC assessment, not to determine Claimant's RFC). Therefore, the ALJ did not err in omitting from the RFC assessment the specific finding he set out in the special technique that Plaintiff had "moderate" limitations in social functioning.

In any event, I find it important to note that a review of DOT listings 209.587-010 (addresser) and 209-587-034(merchandise marker) reveals that both of the jobs cited by the VE and relied upon by the ALJ in determining that Plaintiff could perform work that existed in significant numbers in the national economy indicated that interaction with people is a "not significant" element of the positions. Therefore, even if, as Plaintiff argues, the ALJ erred by omitting limitations in social functioning from Plaintiff's RFC and should have limited Plaintiff to incidental or limited interaction with the general public, such error was harmless.

III. **Plaintiff's Credibility**

As noted above, the ALJ found that Plaintiff's allegations concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were

inconsistent with his assessment of her functional capacity.  Plaintiff contends that the ALJ failed to provide the required support for this conclusion.

## A.  <u>Standards</u>

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). If a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony concerning the severity of symptoms merely because it is not supported by objective medical evidence.  <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998) (<u>citing</u> <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 343 (9th Cir. 1990)(<i>en banc</i>)).  If a claimant produces the requisite medical evidence and there is no evidence of malingering, an ALJ must provide specific, clear and convincing reasons, supported by substantial evidence, to support a determination that the claimant was not wholly credible.  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002); SSR 96-7p.  If substantial evidence supports the ALJ's credibility determination, that determination must be upheld, even if some of the reasons cited by the ALJ are not correct.  <u>Carmickle v. Commissioner of Social Security</u>, 533 F.3d 1155, 1162 (9th Cir. 2008).

## B.  <u>Analysis</u>

Plaintiff here produced evidence of underlying impairments that could reasonably be expected to produce some degree of the symptoms she alleged, and there was no affirmative evidence of malingering.  The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's testimony concerning the severity of her symptoms and limitations.

FINDINGS AND RECOMMENDATION – 14

In support of his credibility determination, the ALJ asserted that Plaintiff's testimony that she had "pain all over her body" due to fibromyalgia was inconsistent with records from her physical evaluation by Patrick Radecki, M.D.; that Plaintiff's testimony that pain interfered with her concentration and that she had paranoia around other people was inconsistent with the findings of Dr. Dietlein; and that Plaintiff's work history showed that she "worked only minimally even prior to her alleged onset date, which raises a question as to whether her continuing unemployment is actually due to medical impairments." (ALJ Decision, p. 8).

The ALJ correctly noted inconsistencies between Plaintiff's testimony and medical record notes from consulting physician, Dr. Radecki.  Plaintiff testified that she had "wide spread pain" from fibromyalgia that caused her shoulders, neck, hips, back, knees and bottom of her feet to hurt and that she takes Tylenol or Motrin for her pain.  Plaintiff testified that it hurts her to stand, that she cannot walk from her doorfront to the bottom of her driveway without experiencing severe pain and that sometimes her pain is so severe that she has to lie down and try to get her body to relax so that the pain will subside.  Plaintiff testified she had to quit her last job because she couldn't go into work most of the time because she hurt so much in the mornings when she got up that she had problems walking from her bed to the bathroom.

In notes of an evaluation on June 5, 2010, Dr. Radecki noted that Plaintiff had "diffuse pains" and "significant crepitus in the knees" but that she had only 8 of 18 tender points during her fibromyalgia evaluation.  Dr. Radecki opined that Plaintiff did not fit the criteria for fibromyalgia.  Plaintiff also demonstrated 5/5 in motor strength in her upper and lower bilateral extremities and 5/5 in bilateral foot strength.  Plaintiff's was able to walk heel-to-toe, walk on her heels and toes, and grasp and manipulate both large and small objects.  Dr. Radecki observed that Plaintiff was able "to get on and off the exam room table chair slowly and she seems to sit

comfortably.  She is able to walk in and out of the exam room without any obvious limp or remarkable difficulty."   Based upon Dr. Radecki's objective findings, the ALJ could reasonably conclude that Plaintiff's limitations were not as severe as Plaintiff alleged.

In support of his credibility determination, the ALJ also noted inconsistency between the results of a psychological evaluation conducted by Nick Dietlein, Psy.D. and Plaintiff's testimony that pain interfered with her concentration and that she has paranoia around other people.  Dr. Dietlein noted that Plaintiff was "clearly able to engage in social interactions at an acceptable level."  Dr. Dietlein also noted that Plaintiff could perform basic mental arithmetic, serial 3's and serial 7's and was "able to sustain her concentration, attention and to persist" during the evaluation.

Plaintiff's support of her argument with references to the low Global Assessment Functioning (GAF) score assigned by Dr. Deitlein and to DHS counseling notes from 2004 is unpersuasive.  The ALJ concluded that the GAF score assigned by Dr. Deitlein to Plaintiff was inconsistent with the doctor's findings and gave it limited weight – a conclusion which Plaintiff did not challenge.  In addition, Dr. Deitlein's evaluation was performed in April 2010, whereas the remarks by Plaintiff's DHS counselor predate Plaintiff's alleged onset date and fail to go as far as Plaintiff argues towards establishing that her limitations are as severe as she alleges.   Even assuming, however, that evidence relating to Plaintiff's alleged paranoia and issues with concentration was capable of more than one rational interpretation, the ALJ's finding was reasonable and must therefore be upheld.  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

The consistency of a claimant's statements concerning her limitations with other evidence in the record is a significant indicator of credibility.  SSR 96-7p.  By noting

inconsistencies between Plaintiff's testimony and the medical evidence contained in the reports Drs. Radecki and Deitlein, the ALJ here provided "clear and convincing" reasons for discounting the credibility of Plaintiff's statements.

Evidence that Plaintiff had rarely worked at a level constituting substantial gainful activity even before her alleged onset of disability also supported the ALJ's credibility finding. A poor work history is a legitimate basis upon which to discount the credibility of Plaintiff's testimony. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002)(upholding the ALJ's finding that claimant's poor work history "negatively reflected her credibility regarding her inability to work").

In her opening brief, Plaintiff attributes her work history to being a "stay at home mom who was involved in a domestic violence situation."  Plaintiff testified that at the time of her hearing with the ALJ on November 30, 2011, her children were 13, 11 and 9 years old. Plaintiff's earnings record beginning in 1994 shows that Plaintiff's earning were rarely above the level of substantial gainful activity between 1994 and 2010.  Although evidence also could support the conclusion now advanced by Plaintiff, the ALJ's conclusion is a rational one and must be sustained. Batson, 359 F.3d at 1193.  In any event, the ALJ articulated other reasons that were clear and convincing for finding Plaintiff's testimony was less than wholly credible and his assessment was supported by substantial evidence.  Under these circumstances, the credibility determination should not be set aside. See, e.g., Carmickle 533 F.3d at 1162 (where supported by substantial evidence, ALJ's credibility determination upheld even if some reasons offered are incorrect).

**Conclusion**

For the reasons set out above, a Judgment should be entered AFFIRMING the Commissioner's decision and DISMISSING this action with prejudice.

**Scheduling Order**

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due  December 15, 2014.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 26th day of November, 2014.


 /s/ John Jelderks                           
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION – 18